AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
| v. | ) |
| Kevin Johansen | ) Case No. |
| | ) |
| | ) |
| | ) |
| Defendant(s) | ) |

**FILED**

OCT 0 1 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

3  10  70865

## CRIMINAL COMPLAINT   JCS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ October 1, 2010 _____ in the county of _____ San Francisco _____ in the
_____ Northern _____ District of _____ California _____, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. § 841(a)(1),(b)(1)(B)(viii) | Possession with the Intent to Distribute 5 Grams or More of Methamphetamine |

This criminal complaint is based on these facts:

**See attached affidavit.**

☑ Continued on the attached sheet.

Approved as to form:

_Brian C. Lewis_
Brian Lewis, AUSA

Sworn to before me and signed in my presence.

Date: 10-1-10

City and state:   San Francisco, California

_Complainant's signature_

Luis Nieves, ICE Special Agent
*Printed name and title*

_Judge's signature_

James Larson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF LUIS NIEVES
## IN SUPPORT OF CRIMINAL COMPLAINT

I, LUIS NIEVES, being duly sworn on oath, state:

### INTRODUCTION

1. This affidavit is submitted in support of a criminal complaint against Kevin JOHANSEN for possessing with the intent to distribute 5 grams or more of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(viii). The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and the circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a complaint, it does not set forth each and every fact that I, or others, have learned during the course of the investigation.

### AGENT BACKGROUND

2. I am a Special Agent (SA) with U.S. Immigration and Customs Enforcement (ICE), assigned to the Office of the Special Agent in Charge, San Francisco (SAC/SF) and have been employed by ICE since November 2008. Prior to my employment with ICE, I was employed as a United States Border Patrol (USBP) Agent at Comstock, Texas for 20 months. I have completed the USBPA Basic Training Program at the Federal Law Enforcement Training Center in Artesia, New Mexico, the ICE Special Agent Training Program, and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. Prior to my employment with the USBP, I was employed as an active duty member of

1

the United States Coast Guard (USCG) for 9 years. I have completed the USCG Boarding Team Member Law Enforcement Training Course at the USCG Training Center in Petaluma, CA and the Maritime Law Enforcement/Boarding Officer Academy at the USCG Reserve Training Center in Yorktown, VA. As part of my primary duties in the USCG, I was a member of a Tactical Law Enforcement Team (TACLET) specializing in narcotics interdiction on the high seas while enforcing federal criminal statutes, including violations of Title 21 of the United States Code. As a USCG member I was involved in multiple narcotics seizures totaling over 10 tons of cocaine and/or marijuana.

3. I am responsible for enforcing federal criminal statutes, including violations of Titles 21 and 18 of the United States Code. I have received training and have actual experience relating to Federal Criminal Procedures, Federal Statutes and U.S. Immigration and Customs Regulations. In the course of my career I have conducted or participated in narcotics investigations wherein methamphetamine, cocaine, opium, heroin, marijuana, MDMA, GBL, precursor chemicals, firearms, and/or currency were seized.

## APPLICABLE LAW

4. Title 21 U.S.C. § 841(a)(1) provides that "[i]t shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to distribute or dispense, a controlled substance[.]"

## GAMMA-BUTYROLACTONE (GBL) AND GAMMA HYDROXYBUTYRATE (GHB)

5. Based on my experience and training, and consultation with other agents and officers experienced in investigations involving GBL, GHB and other narcotics, I know the following:

    a. Gamma Hydroxybutyrate (GHB). GHB is a Schedule I controlled substance that is commonly found in a white powder form or as an odorless, colorless liquid. GHB is a popular drug at late-night clubs and falls into the category of drugs known as "club drugs." At low doses, GHB causes drowsiness, dizziness, nausea, and visual disturbances. At higher dosages, seizures, unconsciousness, severe respiratory depression, coma and death can occur. Due to its use as an agent to facilitate sexual assaults, GHB is sometimes known as the "date rape" drug.

    b. Gamma-Butryrolactone (GBL). GBL is a controlled substance analogue of Gamma Hydroxybutyrate (GHB), which is a Schedule I controlled substance, and is commonly found as sodium or potassium salt, which is a white crystalline powder, or as GHB salt dissolved in water to form a clear solution. A controlled substance analogue, to the extent it is intended for human consumption, is treated as a Schedule I controlled substance under 21 U.S.C. § 813 and therefore is unlawful to possess with intent to distribute under 21 U.S.C. § 841(a)(1) and unlawful to import into the United States under 21 U.S.C. § 952(a). In addition, GBL is a List I Chemical within the meaning of 21 U.S.C. § 802(34). Because GBL is a List I chemical, any person who imports, exports, or distributes GBL must register with the Drug Enforcement Administration (DEA) and make required records and reports. A person who distributes or imports GBL without

being properly registered with DEA has committed a violation of 21 U.S.C. § 843(a)(9).

c. GBL is not illegal in many countries in Europe. Therefore, narcotics traffickers often purchase GBL from a European country where it is not illegal and have it shipped it to the United States via various international express consignment companies. Numerous methods are employed so that the recipients of these shipments are not detected by law enforcement officials. Packages may be addressed in a false name, mailed to a post office box listed in a false name, or mailed to an alternate address all in order to conceal the identity of the recipient. I know that narcotics traffickers who utilize international express consignment shipping companies to transport narcotics typically track the parcel's delivery on the Internet by using the shipping company's website tracking page. I also know GHB and its analogues (like GBL) are more commonly distributed through the Internet than any other controlled substance. Web pages capable of anonymous mailings through Internet service providers and online Internet protocol addresses, used in conjunction with overnight delivery services, provide a means to traffic these substances that elude traditional forms of drug law enforcement.

d. GBL24 is a company based in Poland that purports to sell a cleaning agent used for automotive parts called "Pure Cleaner." But, the company is well known by ICE and Customs and Border Protection (CBP) as a major supplier of the GBL that is illegally imported into the United States. GBL24's website (www.gbl24.com) is registered to Nobu Jacek Sadlowski in Bialystok, Poland. Since August 2008, CBP has seized over one hundred parcels of GBL shipped

from "Nobu Sadlowski" (or a close variant of this name) in Bialystok, Poland. On the "Terms and Conditions" page of the GBL24 website, the following warning is listed in red print, "Dear customers, check your local law before place order, because GBL can be illegal in your country and custom can confiscate your package."

e. The GBL24 website expressly offers GBL for sale as "Pure Cleaner" with an advertised purity of 99.9%. The website offers ten liters of "Pure Cleaner" for $857.14 in U.S. currency and 1 liter of "Pure Cleaner" for $100.14 in U.S. currency. I know from personally navigating this website, as well as from conversations with other agents who have investigated GBL purchases from GBL24, that in order to buy products from GBL24, purchasers must create a user account at GBL24's website utilizing an e-mail account and user selected password.

## FACTS CONSTITUTING PROBABLE CAUSE

6. On September 22, 2010, during a mail enforcement operation pursuant to his border search authority, Customs and Border Protection (CBP) Officer Neil Lageman assigned to the Cincinnati DHL Express Hub in Ohio examined a DHL international parcel declared as "Ink Jet Remover" (tracking number 7251534216). The shipper was listed as Nobu Jacek Sad Owski, Al Tysi Clecia Paxstwa Polskie, Bialystok, 15111, Poland. Since August 2008, CBP has seized over one hundred parcels of GBL shipped from a "Nobu Sadlowski" (or a close variant of this name) in Bialystok, Poland. The package was addressed to Kevin JOHANSEN, 4341 19th Street, San Francisco, CA 94114.

7. Upon opening the parcel, Officer Lageman noted that it contained one plastic container filled with a white oily chemical labeled "Pure Cleaner" and weighed approximately 11.85 kilograms. Based on the physical characteristics of the liquid and a past laboratory test of the contents of a similar package sent from "Nobu Sadlowski" (CBP Laboratory report #CH20100569 dated April 26, 2010) officers identified the white oily chemical in the suspect package as GBL. CBP seized the parcel and documented it under report number 2010SZ010845201.

8. On September 22, 2010, ICE SA Calvin Wong conducted research through law enforcement databases and open sources in an attempt to identify the addressee of the aforementioned GBL shipment. SA Wong conducted queries through a public records database and found a listing for Kevin D. JOHANSEN, date of birth July 3, 1985, and address at 3513 Gentrytown Drive, Antioch, CA 94509. Records also listed 660 4th Street #162, San Francisco, CA 94107 as an address associated with JOHANSEN. I also queried the 660 4th Street address and found that it corresponds to The UPS Store #4592 in San Francisco. Based on my training and experience, I know that narcotics traffickers often address packages to a post office box listed or mail parcels to an alternate address in order to conceal the identity of the recipient and thwart the efforts of law enforcement to seize drug-laden parcels.

9. Still on September 22, 2010, ICE SA Craig Squire conducted queries for Kevin JOHANSEN through the CBP Automated Targeting System (ATS), a database of importation records, and found that on April 24, 2010, a DHL international shipment (tracking number 3093897413), also declared as "Ink Jet Remover," was sent to 3513 Gentrytown Drive, Antioch, CA 94509 (an address associated with JOHANSEN). The shipper was listed as Nobu Jacek Sad Owski, Al Tysi Clecia Paxstwa Polskie, Bialystok, 15111, Poland—the same shipper for the

6

suspicious package intercepted on September 22, 2010. A query of DHL Delivery Signature Detail for tracking number 3093897413 revealed that a "K. JOHANSON" was listed as signing for and accepting the package at the aforementioned address on April 25, 2010.

10. Continuing on September 22, 2010, SA Wong conducted research through the California Department of Motor Vehicles (DMV) image records and obtained a copy of JOHANSEN's picture and current driver license record. SA Wong also retrieved and reviewed a copy of JOHANSEN's official U.S. Department of State DS-11 form, Application for a U.S. Passport, dated October 27, 2003. On this form JOHANSEN listed his occupation at the time as student, a previous address of 7551 Hunters Valley Road, Mariposa, CA 95338, home telephone number as 650-346-2086 and business telephone number as 415-621-4995.

11. On September 23, 2010, CBP Enforcement Analysis Specialist Daniel Stewart conducted a search of the social networking site My Space and found a page for KEVIN JOHANSEN, with the web address of www.myspace.com/moiu. EAS Stewart observed on this My Space page a picture of the owner of the page, which resembled JOHANSEN's passport application picture. Under the heading of "KEVIN'S COMPANIES", the My Space page lists "Quest Clinical Research" (QCR) located in San Francisco, California. A company with the name Quest Clinical Research has a website (www.questclinical.com) that says the company is based in San Francisco, California. Further, the company purports to be a chemical research program dedicated to the development of new therapies for the treatment of life-threatening viral illnesses including HIV/AIDS, Hepatitis B & C, CMV and Influenza. Also, on September 23, 2010, I received a report from the California Employment Development Department indicating that it had no employment records for JOHANSEN.

12. On September 24, 2010, I received information from DEA Special Agent Christopher Mulligan indicating that JOHANSEN is not registered with DEA in any capacity as a manufacturer, importer, exporter, researcher, analytical laboratory, retail distributor, and/or distributor of controlled substances or List I chemicals.

13. On September 22, 2010, SA Wong conducted research through law enforcement databases for Kevin JOHANSEN. Records reviewed by SA Wong indicate that on May 26, 2009, JOHANSEN was arrested by the Redwood City Sheriff's Office for Use/Under Influence of Controlled Substance. Records also indicate that on July 23, 2010, JOHANSEN had been arrested in New York by the DEA.

14. Also on September 22, 2010, New York DEA SA Ferentini informed me that JOHANSEN had been the intended recipient of a package, mailed from California to New York, containing suspected Methylenedioxyamphetamine (MDMA, commonly known as "Ecstasy"), a Schedule 1 Controlled Substance. DEA reports indicate that JOHANSEN was found in possession of four (4) ounces of crystal methamphetamine in a hotel room in New York. SA Ferentini stated that JOHANSEN was charged under 21 U.S.C. 841, conspiracy to distribute methamphetamine.

15. On September 23, 2010, at approximately 2:45 pm, ICE Special Agent Randy Guerra drove by 4341 19th Street, San Francisco, CA 94114, the address to which the suspect package was addressed. As SA Guerra drove by the address he observed a two-story building light blue in color with white trim and gold accents. He also noticed an individual fitting the physical description of Kevin JOHANSEN standing in front of a door labeled "4341" and locking it. SA Guerra was able to identify this individual as JOHANSEN by looking at his DMV photograph. After walking down the stairs in the front of the residence, JOHANSEN stood on

the sidewalk of 19th Street. SA Guerra drove around the block and spotted JOHANSEN again walking down the street. At 2:55 pm, SA Guerra suspended surveillance. Research also revealed that on September 14, 2010, JOHANSEN received a citation from the San Francisco Police Department for driving with a suspended license. JOHANSEN listed 4341 19th Street, San Francisco, CA 94114 as his current address at the time of the citation.

16. On September 29, 2010, EAS Stewart informed me that on September 28, 2010, a second DHL international parcel, also declared as "Ink Jet Remover", weighing 2 kilograms (tracking number 7251906443) had been delivered to the Subject Premises. Tracking information indicates that the package was accepted and signed for by a "K. JOHANSEN". The shipper was listed as Nobu Jacek Sad Owski, Al Tysi Clecia Paxstwa Polski, 15-111, Bialystok, Poland. This is the same shipper and address (or a close variant of the name and address) from the September 22, 2010 suspicious package. The package was addressed to Kevin JOHANSEN, 4341 19th Street, San Francisco, CA 94114. Based on my training and experience, and information obtained during this investigation, I believe this was a shipment of GBL to JOHANSEN.

17. Based on my training and experience, it is my belief that upon receiving the GBL shipment, JOHANSEN has subsequently processed or plans to process the GBL into GHB for distribution. Because the process of converting GBL into GHB is an illegal activity, I believe JOHANSEN would want to conceal his actions from law enforcement by conducting them in the privacy of his home, where he would feel a greater sense of privacy and security to process the GBL for further distribution.

18. On October 1, 2010, along with other law enforcement officers, I executed a search warrant at Kevin JOHANSEN's residence, 4341 19th Street, San Francisco, California

94114. During this search, the following items were found at and seized from JOHANSEN's residence: 1.5 liters of suspected GBL, 12 pills that field tested positively for MDMA, eight (8) ounces of a substance that field tested positively for Methamphetamine, various paraphernalia for manufacturing GHB from GBL, and $7,290 in U.S. currency.

## CONCLUSION

19. Based on all of the facts and circumstances described in this affidavit, along with my training, experience, and consultations with others, there is probable cause to believe that on or about October 1, 2010, Kevin JOHANSEN possessed with intent to distribute 5 grams or more of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

I swear, under penalty of perjury, that the foregoing information is true and correct, to the best of my knowledge, information and belief.

Special Agent Luis Nieves
U.S. Immigration and Customs Enforcement

Subscribed and sworn to before me this /st day of October, 2010

JAMES LARSON
United States Magistrate Judge
Northern District of California